# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHAEL KOESTER**, individually
and on behalf of all others similarly
situated,

         Plaintiffs,

v.

**DRAFTKINGS INC**. and its
Subsidiaries

         Defendants.

Case No. 2:25-cv-14188

The Honorable Jonathan J.C. Grey
Magistrate Judge: Hon. Anthony P.
Patti

## DEFENDANT DRAFTKINGS INC.'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS

Defendant DraftKings Inc. ("DraftKings") respectfully moves the Court to dismiss Plaintiff Michael Koester's ("Plaintiff") Complaint (ECF No. 1) with prejudice, or, in the alternative, strike the class allegations from the Complaint, pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure. The bases for the relief requested in this motion are set forth in the accompanying Brief in Support.

Pursuant to Local Rule 7.1, DraftKings met and conferred with Plaintiff, who is proceeding pro se, on February 26, 2026, regarding the relief requested in this motion and the legal bases supporting it. DraftKings sought Plaintiff's concurrence but was unable to obtain it. Plaintiff has indicated his intent to oppose

1

this motion.

Respectfully submitted

Dated: <u>March 2, 2026</u>          By: <u>/s/ Jon R. Steiger</u>

Jon R. Steiger (P35505)
Patrick M. McCarthy (P49100)
Dane M. Lepola (P82742)
**HOWARD & HOWARD ATTORNEYS PLLC**
450 West Fourth Street
Royal Oak, Michigan 48067-2557
Phone: (248) 645-1483
Facsimile: (248) 645-1568
Email: JSteiger@HowardandHoward.com
PMcCarthy@HowardandHoward.com
DLepola@HowardandHoward.com

Richard R. Patch
Clifford E. Yin
Marcia Valadez Valente
*(Each Admitted to Practice Before the U.S. District Court for the Eastern District of Michigan)*
**COBLENTZ PATCH DUFFY & BASS LLP**
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Phone: (415) 391-4800
Facsimile: (415) 989-1663
Email: EF-RRP@CPDB.com
EF-CEY@CPDB.com
EF-MVV@CPDB.com

***Attorneys for Defendant DraftKings Inc.***

## <u>DEFENDANT DRAFTKINGS INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO STRIKE</u>

Defendant DraftKings Inc. respectfully submits this Brief in Support of its Motion to Dismiss Plaintiff Michael Koester's Complaint, or, in the Alternative, Motion to Strike Class Allegations, pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure.

i

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUES....................................................................iv

INDEX OF MOST CONTROLLING AUTHORITIES............................................vi

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND....................................................................5

    I.     Plaintiff's DraftKings Account and Self-Imposed Limits. ..................5

    II.    MGCB Approval of DraftKings' Internal Controls. ...........................5

    III.   Alleged Limit-Change Conduct (January 2022–January 2023). ..........6

    IV.   Plaintiff's MGCB Complaint and Putative Multi-State Class. .............7

ARGUMENT .....................................................................................7

    I.     The Court Lacks Subject-Matter Jurisdiction Under CAFA
          Because Plaintiff Cannot Represent a Class or Meet the
          Amount in Controversy Requirement. ....................................7

    II.    The Complaint Should Be Dismissed for Failure to State a
          Claim. ........................................................................9

         A.    Counts 1–6: All Claims Fail Because They Conflict with
               and Would Abrogate Authority Vested in the MGCB
               Over DraftKings Licensed Gaming Operations. ......................10

         B.    The Court Should Dismiss Count 1 Alleging a Violation
               of Rule 432.653(2)(c) Because the Rule Does Not Create
               a Private Right of Action. .........................................14

         C.    The Court Should Dismiss Count 2 Alleging Negligence
               Per Se Because It Is Not an Independent Cause of Action.......15

         D.    The Court Should Dismiss Count 3 Alleging Breach of
               Contract Because Plaintiff Has Not Alleged Essential
               Elements of His Claim. ...........................................16

         E.    The Court Should Dismiss Count 4 Alleging a Statutory
               Conversion Claim Because the Subject Transfers Were
               Voluntary. .........................................................19

         F.    The Court Should Dismiss Count 5 Because Plaintiff's
               Allegations Fall Outside the Limited Scope of Negligent
               Infliction of Emotional Distress..................................20

G.     The Court Should Dismiss the EFTA Claim. ...........................21

1.     Plaintiff Fails to Identify Any EFTA Provision or Allege an "Unauthorized Electronic Fund Transfer." .....................................................................21

2.     Plaintiff's EFTA Claim Is Time-Barred.........................23

III.   The Class Allegations Should Be Dismissed or Stricken. ..................23

CONCLUSION .........................................................................................24

## STATEMENT OF THE ISSUES

Whether the Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6), or the class allegations stricken under Rule 12(f), because:

1. Jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), fails because Plaintiff cannot maintain a Rule 23 class action while proceeding pro se and does not plausibly allege the $5 million amount in controversy;

2. Counts 1–6 fail because they conflict with the Michigan Gaming Control Board's ("MGCB") approval of DraftKings' Internal Controls;

3. Count 1 (claim under Mich. Admin. Code R. 432.653(2)(c)) fails because the regulation creates no private right of action and is enforceable only by the MGCB;

4. Counts 2–5 fail because they rest on the same misreading of Rule 432.653(2)(c) and improperly recast regulatory compliance as tort or contract liability;

5. Count 2 (negligence per se) fails because Michigan law does not recognize negligence per se as an independent cause of action;

6. Count 3 (breach of contract) fails because Plaintiff does not allege and cannot allege a breach of DraftKings' Terms of Use, which expressly state that DraftKings is not liable for a breach of any state law, and because a choice of law provision does not impose any obligation to perform under state law;

7. Count 4 (statutory conversion) fails because Plaintiff did not allege that DraftKings wrongfully exercised dominion over any of Plaintiff's funds or converted those funds for its own use;

8.    Count 5 (negligent infliction of emotional distress) fails because
Plaintiff did not allege an injury to a third person or that he witnessed
that injury;

9.    Count 6 (EFTA) fails because the transfers were authorized and, in
any event, the claim is time-barred; and

10.   The class allegations fail because Plaintiff cannot serve as an adequate
representative and lacks standing to assert non-Michigan claims.

## <u>INDEX OF MOST CONTROLLING AUTHORITIES</u>

1. *Davis v. BetMGM, LLC*, No. 166281, 2025 WL 2054575 (Mich. July 22, 2025).

2. *Kraft v. Detroit Entertainment, LLC*, 683 N.W.2d 200 (Mich. App. 2004).

3. *Epps v. 4 Quarters Restoration LLC*, 872 N.W.2d 412 (Mich. 2015).

4. *Ziegler v. State of Mich.*, 90 F. App'x 808 (6th Cir. 2004).

5. *In re Romanzi*, 31 F.4th 367 (6th Cir. 2022).

6. *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136 (Mich. 2015).

7. *Trotta v. American Airlines, Inc.*, 741 F. Supp. 3d 673 (E.D. Mich. 2024).

8. *Alexander v. Sandoval*, 532 U.S. 275 (2001).

9. *Zeni v. Anderson*, 243 N.W.2d 270 (Mich. 1976).

10. *Simon v. JPMorgan Chase Bank, N.A.*, No. 15-CV-10202, 2015 WL 8608632 (E.D. Mich. Dec. 14, 2015).

11. *Duran v. Detroit News, Inc.*, 504 N.W.2d 715 (Mich. Ct. App. 1993)

12. 28 U.S.C. 1332.

13. Mich. Comp. Laws § 432.309(1), (1)(f).

14. Mich. Admin. Code R. 432.653(2)(c).

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)....................................................................................19

*Alomran v. Marriott Vacations Worldwide Corp.*,
  No. 25-CV-22276-TORRES, 2025 WL 2394690 (S.D. Fla. Aug. 18, 2025)......8

*Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*,
  871 N.W.2d 136 (Mich. 2015)................................................................19, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................9, 10

*Baker v. Salvation Army*,
  No. 09-11424, 2011 WL 1233200 (E.D. Mich. Mar. 30, 2011).......................10

*Barvie v. Bank of America, N.A.*,
  No. 18-cv-449-JLS (BGS), 2018 WL 4537723 (S.D. Cal. Sept. 21, 2018 ........22

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
  528 F.3d 426 (6th Cir. 2008) .................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................10

*Bledsoe v. FCA US LLC*,
  663 F. Supp. 3d 753 (E.D. Mich. 2023) ....................................................23, 24

*Burton v. William Beaumont Hosp.*,
  373 F.Supp.2d 707 (E.D. Mich. 2005) ...............................................17

*D'Ambrosio v. Marino*,
  747 F.3d 378 (6th Cir. 2014) .................................................................10

*Davis v. BetMGM, LLC*,
  No. 166281, 2025 WL 2054575 (Mich. July 22, 2025) ............................*passim*

*Duran v. Detroit News, Inc.*,
    504 N.W.2d 715 (Mich. Ct. App. 1993) ............................................................21

*Epps v. 4 Quarters Restoration LLC*,
    872 N.W.2d 412 (Mich. 2015) .........................................................................15

*Garrison v. Mich. Dep't of Corr.*,
    333 F. App'x 914 (6th Cir. 2009) ......................................................................8

*GEICO Corp. v. Autoliv, Inc.*,
    345 F. Supp. 3d 799 (E.D. Mich. 2018) ..........................................................24

*Kraft v. Detroit Entertainment, LLC*,
    683 N.W.2d 200 (Mich. App. 2004) ...................................................4, 11, 12, 16

*Martin v. Overton*,
    391 F.3d 710 (6th Cir. 2004) ...........................................................................10

*Michigan 32, LLC v. Travelers Ins. Co.*,
    No. 25-CV-10273, 2025 WL 3469267 (E.D. Mich. Dec. 3, 2025) ...................17

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
    895 F.2d 266 (6th Cir. 1990) .............................................................................7

*Mustric v. Huntington Nat'l Bank*,
    No. 2:18-cv-1279, 2019 WL 1472095 (S.D. Ohio Apr. 3, 2019) .......................9

*Ogle v. Columbia Gas Transmission, LLC*,
    513 F. App'x 520, 522 (6th Cir. 2013 ..............................................................10

*Polkowski v. Jack Doheny Companies, Inc.*,
    No. 2:25-CV-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) ...............16

*Prignoli v. Bruczynski*,
    No. 20-cv-907 (MKB), 2021 WL 4443895 (E.D.N.Y. Sept. 28, 2021) .............22

*In re Romanzi*,
    31 F.4th 367 (6th Cir. 2022) ............................................................................20

*Sagmani v. Hailo*,
    No. 243731, 2004 WL 243365 (Mich. Ct. App. Feb. 10, 2004) .......................15

*Shupe v. Rocket Companies, Inc.*,
    660 F. Supp. 3d 647 (E.D. Mich. 2023) ............................................................12

*Simon v. JPMorgan Chase Bank, N.A.*,
    No. 15-CV-10202, 2015 WL 8608632 (E.D. Mich. Dec. 14, 2015)..................22

*Subramanyam v. KLM Royal Dutch Airlines*,
    No. 20-11296, 2021 WL 1592664 (E.D. Mich. Apr. 23, 2021) ........................18

*Thomas v. Noder-Love*,
    621 F. App'x 825 (6th Cir. 2015) ........................................................................6

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) .............................................................................10

*Trotta v. American Airlines, Inc.*,
    741 F. Supp. 3d 673 (E.D. Mich. 2024) ......................................................18, 19

*United States v. Burns*,
    109 F. App'x. 52 (6th Cir. 2004) .........................................................................7

*Weiner v. Klais and Co., Inc.*,
    108 F.3d 86 (6th Cir. 1997) ...............................................................................17

*Williams v. WMC Mortg. Corp.*,
    No. 05-73356, 2006 WL 2844128 (E.D. Mich. Sept. 29, 2006) ......................21

*Zeni v. Anderson*,
    243 N.W.2d 270 (Mich. 1976)...........................................................................16

*Ziegler v. State of Mich.*,
    90 F. App'x 808 (6th Cir. 2004) ..........................................................................8

**Statutes & Rules**

15 U.S.C.
    § 1693............................................................................................................8
    § 1693(b).......................................................................................................21
    § 1693a(12)...................................................................................................22
    § 1693m(g)...................................................................................................23

28 U.S.C.
§ 1331..................................................................................................8
§ 1332(d)(1)(B)....................................................................................8
§ 1332(d)(2)..................................................................................4, 8, 9
§ 1367(a)..............................................................................................8

Mich. Admin. Code
R. 432.653(2)(c).........................................................................*passim*
R. 432.663....................................................................................11, 12
R. 432.663a........................................................................................11
R. 432.663c........................................................................................11
R. 432.664....................................................................................11, 12

Mich. Comp. Laws
§ 432.204a(1)(d)................................................................................15
§ 432.309(1).......................................................................................10
§ 432.309(1)(f)............................................................................10, 13

Rule 12(b)(6)........................................................................................6, 9

Rule 23................................................................................................4, 8

**Other Authorities**

12 C.F.R. § 1005.2(m) .......................................................................22

# INTRODUCTION

DraftKings Inc. ("DraftKings") moves to dismiss all claims brought by Plaintiff Michael Koester ("Plaintiff") centered around his misguided allegation that DraftKings did not comply with a Michigan regulation requiring DraftKings to allow him to set time- and money-based wagering limits. Plaintiff's reading of the regulation is incorrect. His claims should be dismissed because (1) the Court lacks subject-matter jurisdiction; (2) his claims conflict with the Michigan Gaming Control Board's ("MGCB") approval of DraftKings time- and money-based wagering limits; (3) the relevant regulation provides him no private right of action; and (4) he is not an adequate representative to pursue a class action or to assert non-Michigan claims.

The Michigan Legislature vested the MGCB with specific authority to formally approve internal controls governing the responsible gaming measures of licensed operators such as DraftKings. Those internal controls include the procedures concerning the limits that, for specific periods of time, patrons may set on (i) the amount they may deposit into their accounts; (ii) the amount of any single wager they may make; (iii) how much money they wish to spend while playing; and (iv) the maximum time they wish to play. The MGCB approved DraftKings' Internal Controls, which during the relevant time period included the following responsible gaming control:

> DraftKings also provides the below limits that players
> can impose on their account by choosing an amount over
> a daily, weekly and monthly period. . . . *Players are
> unable to remove these restrictions until the restriction
> period has ended*; however, Players are always able to
> make their limits more restrictive. *Daily limits can be
> increased after 24 hours, weekly after 7 days, and
> monthly after 30 days.* A decrease to the user's set limits
> shall be effective immediately to protect the user.

> (emphasis added)

> DraftKings' Internal Controls, Section 6 (Responsible
> Gaming).

Under this MGCB-approved framework, a DraftKings customer could

increase a previously set limit (e.g., increase the amount he or she may deposit into

his or her account) only after the applicable restriction period had expired and with

no additional waiting period.

Despite the MGCB's approval of that standard, Plaintiff contends that

DraftKings was *also* required to impose an additional 24-hour waiting period every

time a user requested an increase in a previously set limit. He bases that contention

on Mich. Admin. Code R. 432.653(2)(c) (the "Rule"), which provides:

> Once established by an authorized participant and
> implemented by the internet gaming platform, it must
> only be possible to reduce the severity of self-imposed
> limitations upon 24 hours notice, or as required by the
> board.

DraftKings at all times complied with the Rule. Under the MGCB-approved

framework, once a customer set a limit—whether daily, weekly, or monthly—they

could not reduce the severity of that limit for at least 24 hours. Plaintiff misreads the Rule to require a 24-hour delay before any increase takes effect, regardless of when the initial limit was set. Plaintiff's interpretation is incorrect. The Rule does not mandate a second, additional 24-hour delay for every limit increase. Even if it did—and it does not—Plaintiff ignores the provision that states "or as required by the board," which authorized the MGCB to approve alternate restrictions to Plaintiff's proposed 24-hour waiting period. Here, the MGCB unquestionably approved DraftKings' Internal Control that allowed a limit increase to be effective without a waiting period once the agreed "restriction period" has ended. In other words, by any definition, DraftKings complied with the Rule.

Not only did the MGCB approve the very Internal Control he challenges, it also failed to take action on the complaint he submitted on this issue. Plaintiff conceded that he "provided the MGCB with similar information as to that provided within the complaint, and the MGCB opened up Case IG-2023-0126. Based on their investigation, the MGCB decided to take no action." (ECF No. 4 at PageID.45.) Plaintiff now seeks to have this Court impose a different standard based on his incorrect interpretation of the Rule. His attempts fail for multiple reasons.

First, this Court lacks subject-matter jurisdiction to decide his claims. As made apparent by the face of the Complaint, there is no subject-matter jurisdiction

under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

Second, the Legislature charged the MGCB—not private litigants or the courts—with approving and enforcing responsible-gaming internal controls like the limits at issue here, and the MGCB exercised that authority by approving DraftKings' internal controls, including the very limit-change functionality Plaintiff attacks. Michigan courts have repeatedly held that litigants cannot assert claims that seek to impose a different, court-created compliance standard that conflicts with standards approved by the MGCB. *Davis v. BetMGM, LLC*, No. 166281, 2025 WL 2054575 (Mich. July 22, 2025); *Kraft v. Detroit Entertainment, LLC*, 683 N.W.2d 200, 208–9 (Mich. App. 2004).

Third, each claim in the Complaint fails as a matter of law for independent reasons. Among other things, the regulation Plaintiff cites creates no private right of action, and alleged regulatory violations cannot be repackaged as claims for negligence per se, breach of contract, conversion, or emotional-distress damages. Plaintiff's EFTA claim similarly fails on its face because the transfers alleged were initiated by the consumer and because the claim is time-barred.

Lastly, the class allegations fail as a matter of law. A pro se litigant like Plaintiff cannot represent a putative class or satisfy Rule 23's adequacy requirement. He likewise lacks Article III standing to assert claims under the laws of states in which he suffered no injury.

The Court should dismiss the Complaint with prejudice or, alternatively, dismiss or strike the class allegations in their entirety.

## FACTUAL BACKGROUND[1]

### I.   Plaintiff's DraftKings Account and Self-Imposed Limits.

Plaintiff is a Michigan resident who alleges that he first became aware of DraftKings and registered an account on DraftKings' online sportsbook platform ("DK Sportsbook") in the "latter half of 2021." (ECF No. 1 at PageID.3.) His account included a financial holding account through which he deposited and withdrew funds. (*Id.*) Plaintiff alleges that he transferred funds into his account and does not allege that DraftKings or any third party initiated deposits or wagers without his authorization. (*Id.*) Plaintiff further alleges that beginning in or around December 2021, he established various self-imposed limits on his DraftKings account using the responsible gaming tools provided by DraftKings, including deposit limits. (ECF No. 1 at PageID.5.)

### II.   MGCB Approval of DraftKings' Internal Controls.

Pursuant to the Lawful Internet Gaming Act ("LIGA"), DraftKings submitted its DK Sportsbook "Internal Controls," which included its responsible-gaming safeguards, to the MGCB for review and approval. Request for Judicial Notice ("RJN"), Exhs. 1–4. The MGCB approved those Internal Controls,

---

[1] As required, and for the purposes of this motion only, DraftKings relies on facts taken from the Complaint, without accepting their truth.

including the provisions governing how self-imposed limits may be increased or removed.[2]

The MGCB-approved Internal Controls define how responsible-gaming limits operate in practice, including the timing of increases and decreases to user-selected limits. During the relevant period, the approved Internal Controls provided that daily limits could be increased after 24 hours, weekly limits after 7 days, and monthly limits after 30 days, and that decreases were effective immediately.

## III.   Alleged Limit-Change Conduct (January 2022–January 2023).

Plaintiff alleges that between January 2022 and January 2023, DraftKings permitted him to increase or remove his self-imposed limits without a 24-hour waiting period before the changes took effect (ECF No. 1 at PageID.8), and that the increases became effective immediately (*id.*). He further alleges that, during the ensuing 24-hour periods, DraftKings accepted deposits exceeding $25,000 (*id.*), and asserts that a waiting period would have delayed or prevented further gambling (*id.*). Plaintiff does not allege that DraftKings misrepresented, concealed, or deviated from its disclosed limit functionality. (*See* ECF No. 1 at PageID.5–8.) His

---

[2] The Court may take judicial notice of the MGCB's approval of DraftKings' Internal Controls governing responsible-gaming limits. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) (courts may consider "letter decisions of governmental agencies" without converting a Rule 12(b)(6) motion). The Sixth Circuit permits consideration of documents referenced in the complaint and central to the claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

claim rests solely on his interpretation of the Rule. (*Id.*)

## IV.   Plaintiff's MGCB Complaint and Putative Multi-State Class.

Plaintiff alleges that prior to filing this action, he invoked the MGCB's

patron-complaint process regarding DraftKings' responsible-gaming controls (ECF

No. 1 at PageID.8), and he has subsequently acknowledged that the MGCB did not

require corrective action or initiate enforcement proceedings in response.[3] (ECF

No. 4 at PageID.45.) Plaintiff purports to bring this action not only on his own

behalf, but on behalf of a putative class of DraftKings users in Michigan,

Colorado, Connecticut, Indiana, Iowa, Louisiana, and New York (ECF No. 1 at

PageID.1–2, 14–21), even though he alleges only that he used DraftKings in

Michigan (*id.* at PageID.3).

## ARGUMENT

## I.   The Court Lacks Subject-Matter Jurisdiction Under CAFA Because Plaintiff Cannot Represent a Class or Meet the Amount in Controversy Requirement.

The plaintiff bears the burden of establishing subject-matter jurisdiction, and

dismissal is required where that burden is not met. *Moir v. Greater Cleveland*

*Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The Court may resolve

jurisdictional defects apparent on the face of the complaint. *Id.*

---

[3] The Court may treat Plaintiff's statement that the MGCB did not take corrective action as a judicial admission. *See United States v. Burns*, 109 F. App'x. 52, 58 (6th Cir. 2004).

Plaintiff purports to invoke subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).[4] CAFA, however, confers jurisdiction only over a qualifying "class action," defined as a civil action filed under Rule 23 (or a similar state rule) that is capable of being maintained as such. 28 U.S.C. § 1332(d)(1)(B). Where an action cannot, as a matter of law, proceed under Rule 23, CAFA jurisdiction never attaches. That is the case here. Plaintiff, a non-attorney, cannot represent a class pro se and cannot satisfy the amount in controversy requirement.

Plaintiff is not an attorney, has not retained counsel, and states that he intends to proceed pro se until "threshold questions are answered by the court." (ECF No. 1 at PageID.18.) The Sixth Circuit has unequivocally held that "non-attorneys proceeding pro se cannot adequately represent a class." *Ziegler v. State of Mich.*, 90 F. App'x 808, 810 (6th Cir. 2004); *see also Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009). As such, he cannot maintain a Rule 23 class action and cannot meet the burden to establish subject-matter jurisdiction under CAFA. *See Ziegler*, 90 F. App'x at 810; *see also Alomran v. Marriott*

---

[4] Although Plaintiff invokes CAFA as the sole basis for jurisdiction, the Complaint establishes federal question jurisdiction. Count Six asserts a claim under the Electronic Fund Transfer Act, 15 U.S.C. § 1693. *See* ECF 1, PageID.24. Federal district courts have original jurisdiction over claims arising under federal law. 28 U.S.C. § 1331. Accordingly, this Court has original jurisdiction over the EFTA claim and supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(a), as all claims arise from the same alleged conduct. The Court therefore may and should resolve the merits of Plaintiff's claims.

*Vacations Worldwide Corp.*, No. 25-CV-22276-TORRES, 2025 WL 2394690, at *2–3 (S.D. Fla. Aug. 18, 2025) ("Accordingly, Plaintiffs cannot proceed under CAFA without being represented by counsel, and therefore, CAFA does not confer subject-matter jurisdiction in this case."); *Mustric v. Huntington Nat'l Bank*, No. 2:18-cv-1279, 2019 WL 1472095, at *2–3 (S.D. Ohio Apr. 3, 2019) (same). Dismissal is required on this basis alone.

Plaintiff also does not plausibly allege that the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2). While he alleges that the amount in controversy exceeds that amount (ECF No. 1 at PageID.3), he pleads facts supporting damages only as to himself, alleging that DraftKings accepted deposits from him "in excess of $25,000." (*Id.* at PageID.8.) He alleges no facts concerning the number of putative class members who purportedly suffered similar losses, the duration or frequency of any alleged violations as to those individuals, or any basis from which the Court could reasonably infer aggregate damages approaching—let alone exceeding—$5 million.

## II.   The Complaint Should Be Dismissed for Failure to State a Claim.

Rule 12(b)(6) requires dismissal where a complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted). The Court need

not credit "unwarranted factual inferences," *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009), or "legal conclusions masquerading as factual allegations." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). These standards apply even where, as here, the plaintiff is pro se. *Ogle v. Columbia Gas Transmission, LLC*, 513 F. App'x 520, 522 (6th Cir. 2013). "The leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011). Plaintiff fails to satisfy the plausibility standard set forth in *Iqbal* and *Twombly*.

## A.    Counts 1–6: All Claims Fail Because They Conflict with and Would Abrogate Authority Vested in the MGCB Over DraftKings Licensed Gaming Operations.

All of Plaintiff's claims fail at the outset because (i) they conflict with specific statutory and regulatory authority exercised by the MGCB; and (ii) they are based on a misinterpretation of the relevant statute.

The MGCB has defined statutory powers to administer, regulate, and enforce internet gaming over licensed gaming operations, including developing, approving, and enforcing responsible-gaming and player-protection requirements. Mich. Comp. Laws § 432.309(1), (1)(f). Pursuant to that authority, the MGCB requires licensed gaming operators to submit detailed internal controls—including

responsible-gaming measures—before commencing licensed internet gaming, and the MGCB then retains continuing authority over amendments and revisions. Mich. Admin. Code R. 432.663, 432.663a, 432.663c. Once approved, those internal controls govern the licensee's licensed gaming operations and are enforceable by the Board. *See id.* R. 432.664. Determinations concerning how responsible-gaming controls are designed, approved, and implemented—and whether a licensee's licensed gaming operations comply with those requirements— fall within the MGCB's regulatory domain. *See Kraft*, 683 N.W.2d at 209. When the MGCB has exercised that statutory authority (as it has done here), claims by dissatisfied patrons that are "incompatible" with that exercise are abrogated. *Davis*, 2025 WL 2054575 at *2. The Michigan Supreme Court's decision in *Davis v. BetMGM, LLC* makes that clear:

> The proper focus is whether the MGCB's exercise of authority, as permitted by the LIGA, results in a licensee obtaining immunities and rights derived from the MGCB's actions. Under this scheme, a disgruntled patron may not bring an action against a licensee if the MGCB has exercised its statutory authority to render a decision that is incompatible with those claims.

*Davis*, 2025 WL 2054575 at *2.

Here, the MGCB has exercised its statutory authority to render *two* decisions that are each incompatible with Plaintiff's claims. First, the MGCB chose not to take any action in response to this very issue when Plaintiff raised an identical complaint to them. He alleges that he filed a complaint with the MGCB *before*

bringing this action. (ECF No. 1 at PageID.8, 13.) He does not allege that the MGCB found a violation, required corrective action, or directed DraftKings to alter its controls. Second, the MGCB approved DraftKings' Internal Controls—as required by Rule 432.663—and those controls are binding and enforceable by the Board, not private litigants. *See id.* R. 432.664 (operators "must comply" with approved internal controls; Board may initiate disciplinary action). Those approved controls specifically support its conduct here, including controls that specified that (i) "Players are unable to remove these restrictions until the restriction period has ended;" and (ii) "Daily limits can be increased after 24 hours, weekly after 7 days, and monthly after 30 days." RJN, Exhs. 1–3, Section 6 (Responsible Gaming).[5]

Allowing Plaintiff to proceed based on his (incorrect) interpretation of the Rule—when the MGCB took no action in response to his complaint and approved DraftKings' Internal Controls dictating a different result—would give rise to conflicting standards for DraftKings. That is precisely the type of conflict *Kraft* prohibits. *See Kraft*, 683 N.W.2d at 210 (barring claims that would impose "conflicting standards" after MGCB approval of gaming devices). And in *Davis,* the Michigan Supreme Court affirmed the principles of *Kraft. Davis*, 2025 WL 2054575, at \*10. There, the court allowed the common law claims to proceed only

---

[5] As detailed in the RJN, the Court may take judicial notice of the MGCB's approval of DraftKings' Internal Controls at this stage. *Shupe v. Rocket Companies, Inc.*, 660 F. Supp. 3d 647, 662–63 (E.D. Mich. 2023).

because LIGA did not clearly abrogate them and the claims did not conflict with any specific exercise of the MGCB's authority. The matter concerned a discrete patron payout dispute that did not challenge any MGCB-approved regulatory framework. Here, by contrast, Plaintiff does not allege a discrete payout dispute, instead mounting a facial challenge to the legality of DraftKings' MGCB-approved responsible-gaming architecture itself. (ECF No. 1 at PageID.1, 2, 5–8, 21–25 ("This case is about Defendants' systemic failure to follow the laws of the State of Michigan . . .").) Those system-level design and compliance judgments are precisely within the MGCB's specific authority over licensed operations. MCL § 432.309(1)(f). Nor does Plaintiff assert any claims independent of LIGA. Indeed, every cause of action—whether pled as a statutory claim[6] or under a common-law theory[7]—is premised on an alleged violation of the Rule. Even apart from the absence of a private right of action, Plaintiff's claims fail because they are premised on a theory that conflicts with the MGCB's specific regulatory authority over licensed operations.

Lastly, Plaintiff's claim rests on a selective and incorrect reading of the Rule. Plaintiff incorrectly interprets the Rule as imposing a blanket 24-hour

---

[6]  His statutory claims include his first claim for violation of the Rule, his fourth claim for statutory conversion, and his sixth claim for violation of the EFTA.
[7] Those claims include his second cause of action for negligence per se, his third cause of action for breach of contract, and his fifth cause of action for negligent infliction of emotional distress.

waiting period before *any* change to *any* limit becomes effective. But the rule requires 24-hour notice only when a pre-existing limit was "established" by the user and "implemented" by DraftKings. For example, if a player had previously established a daily limit, then, under this rule, the player cannot increase that limit for 24 hours, which is entirely consistent with DraftKings' Internal Controls that the MGCB approved. Even if Plaintiff's interpretation of the Rule were correct—which it is not—the Rule also permits changes "as required by the board," and the Board approved DraftKings' controls. (ECF No. 1 at PageID.4.)

Counts 1 through 6 therefore fail as a matter of law and should be dismissed with prejudice.

### B. The Court Should Dismiss Count 1 Alleging a Violation of Rule 432.653(2)(c) Because the Rule Does Not Create a Private Right of Action.

Under his first cause of action, Plaintiff seeks to assert, improperly, a claim directly under the Rule. (ECF No. 1 at PageID.21–22.) The Rule creates no private right of action and is enforced by the MGCB. *See Davis*, 2025 WL 2054575, at *8–10.

The statutory scheme confirms this result. The Legislature has made clear that administrative enforcement over licensed gaming operations—not private litigation—is the mechanism for addressing alleged violations of MGCB rules.[8]

---

[8] As noted, Plaintiff concedes that the MGCB expressly declined to take any action

Mich. Comp. Laws § 432.204a(1)(d) (providing that the board has "all powers necessary and proper to" "[i]nvestigate alleged violations of this act or rules promulgated by the board and to take appropriate disciplinary action against a licensee . . . or institute appropriate legal action for enforcement, or both").

Michigan law forecloses Plaintiff's attempt to obtain relief. Where the Legislature creates a comprehensive regulatory scheme over licensed activities and assigns enforcement to an administrative agency, as it did here, courts will not infer a private right of action or allow judicial remedies over such activities that would displace that scheme. *Epps v. 4 Quarters Restoration LLC*, 872 N.W.2d 412, 420–21 (Mich. 2015). The Rule contains no indication—express or implied— that it authorizes private enforcement, whether through declaratory or injunctive relief, damages, punitive awards, or attorney's fees.[9] Allowing Count 1 to proceed would improperly convert an administrative compliance rule into a private enforcement mechanism, which Michigan law does not permit.

### C.     The Court Should Dismiss Count 2 Alleging Negligence Per Se Because It Is Not an Independent Cause of Action.

Just as Plaintiff cannot sue under the Rule directly, he cannot use it as a

---

against DraftKings in response to Plaintiff's regulatory complaint alleging that DraftKings violated the Rule.

[9] Additionally, in the absence of a statutory provision providing otherwise, punitive damages and attorney fees are not recoverable in Michigan. *Sagmani v. Hailo*, No. 243731, 2004 WL 243365, at *5 (Mich. Ct. App. Feb. 10, 2004).

predicate for a negligence per se claim either. Negligence per se is not recognized as an independent cause of action. *Polkowski v. Jack Doheny Companies, Inc.*, No. 2:25-CV-10516, 2025 WL 3079358, at *9 (E.D. Mich. Nov. 4, 2025) ("negligence per se is not an independent cause of action") (quoting *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011)). As the Michigan Supreme Court explained in *Zeni v. Anderson*, a statutory violation does not create automatic civil liability. 243 N.W.2d 270, 277–78 (Mich. 1976).

Even if construed as a claim for ordinary negligence (which Plaintiff did not plead), the claim still fails. Regulatory compliance matters committed to and exercised by the MGCB may not be repackaged as private tort claims seeking to impose conflicting judicial standards. *Davis*, 2025 WL 2054575, at *8–10. Where the Legislature vests regulatory authority in the MGCB over licensed gaming activities and the Board has approved the precise operational framework at issue, a plaintiff cannot state an ordinary negligence claim premised on the theory that regulator-approved conduct was unreasonable, as courts may not impose "conflicting standards" that prohibit conduct authorized by the MGCB. *See Kraft*, 683 N.W.2d at 208–10.

**D.** **The Court Should Dismiss Count 3 Alleging Breach of Contract Because Plaintiff Has Not Alleged Essential Elements of His Claim.**

"Under Michigan law, the elements of a breach of contract claim are: (1) the

existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 718 (E.D. Mich. 2005). "Where the relevant contract contradicts allegations in the complaint, the contract language governs." *Michigan 32, LLC v. Travelers Ins. Co.*, No. 25-CV-10273, 2025 WL 3469267, at *2 (E.D. Mich. Dec. 3, 2025).

Plaintiff has not pled and cannot plead the second, third and fourth elements of a breach of contract claim. He alleges the existence of a contract, specifically, "the terms and conditions of the Defendants' platform User Agreement" (the "Terms of Use"), extensively quotes from those Terms of Use, and bases his breach of contract claim on them. (ECF No. 1 at PageID.13, 23.) The Court may therefore consider the *full* Terms of Use even though they are not attached to the complaint. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). But Plaintiff does not allege—and the full Terms of Use make clear he *cannot* allege— any term requiring performance as contemplated by his Complaint, any breach of the Terms of Use, or any damage.

Plaintiff does not and cannot allege that any provision of the Terms of Use requires the alleged performance. He does not allege that the Terms of Use require DraftKings to provide him with any waiting period or to specifically comply with his (mistaken) interpretation of the Rule. While he does allege that DraftKings

breached the Terms of Use by failing to follow Michigan law (and specifically the Rule), he cannot point to any provision in the Terms of Use that specifically requires DraftKings to follow (or that would make DraftKings liable for breach of) Michigan law. The Terms of Use instead state that DraftKings "shall not be liable for any breach of any local, national, federal, state or other laws that may occur as a result of your using the Services." RJN, Exhs. 1–3, Terms and Conditions.

All Plaintiff alleges is that there is a choice of law provision in the Terms of Use that provides "These Terms of Use shall be governed by the internal substantive laws of the state of Michigan . . ." (ECF No. 1 at PageID.13.) But his theory—that, under this provision, DraftKings may be liable for failing to follow Michigan law—fails as a matter of law. A choice-of-law clause determines which jurisdiction's law governs interpretation of the contract; it does not transform regulatory obligations into contractual promises. *Trotta v. American Airlines, Inc.*, 741 F. Supp. 3d 673, 676–78 (E.D. Mich. 2024) (dismissing a breach-of-contract claim premised on alleged regulatory noncompliance, explaining that a general choice-of-law clause "does not reference [a specific] regulation (or any other specific law or rule) such that it could become a contract term . . . enforce[able] through a civil suit"); *Subramanyam v. KLM Royal Dutch Airlines*,  No. 20-11296, 2021 WL 1592664, at *7–8 (E.D. Mich. Apr. 23, 2021). Allowing such claims would permit plaintiffs to evade the absence of a private right of action under state

or federal law by repackaging regulatory enforcement as contract liability. *Trotta*, 741 F. Supp. 3d at 678–79; *see also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). In fact, Plaintiff's theory would convert every alleged regulatory violation into a contract claim wherever a contract contains a choice-of-law clause—an outcome courts consistently reject. This Court should do the same.

### E.   The Court Should Dismiss Count 4 Alleging a Statutory Conversion Claim Because the Subject Transfers Were Voluntary.

Plaintiff alleges that DraftKings committed statutory conversion under Michigan law and similar (unspecified) statutes in other states by accepting deposits and wagers made voluntarily by him (or others) during periods when he contends a regulatory waiting period should have applied. (ECF No. 1 at PageID.8, 23.) That theory fails as a matter of law.

Michigan's conversion statute is narrow: it requires allegations that (i) a defendant wrongfully exercised dominion over the plaintiff's property without consent, and (ii) the defendant converted that property to the defendant's own use, meaning a use personal to the defendant and inconsistent with the owner's rights. *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 146–48 (Mich. 2015). Plaintiff's own allegations negate both of those elements.

Plaintiff alleges that he voluntarily deposited funds into his DraftKings account and voluntarily used those funds to place bets—the precise purpose for

which the funds were transferred. (ECF No. 1 at PageID.3, 5–8, 23.) Under Michigan law, consensual transfers that are used for their intended purpose *cannot* support a conversion claim. *In re Romanzi*, 31 F.4th 367, 381 (6th Cir. 2022).

Plaintiff also fails to allege that DraftKings converted any funds for its "own use." He does not claim that DraftKings seized funds without authorization, diverted them for an unintended purpose, or refused to return funds that remained his property. Instead, he alleges only that DraftKings accepted deposits and wagers at times when he believed a regulatory waiting period should have applied. (ECF No. 1 at PageID.8, 23.) Accepting customer funds for their intended purpose—even if allegedly noncompliant with a regulation—does not constitute employing another's property for a personal use. *Aroma Wines*, 871 N.W.2d at 148–49. Because Plaintiff fails to allege either wrongful dominion without consent or conversion to DraftKings' own use, his conversion claim fails as a matter of law.

### F.  The Court Should Dismiss Count 5 Because Plaintiff's Allegations Fall Outside the Limited Scope of Negligent Infliction of Emotional Distress.

Plaintiff alleges that, as a result of DraftKings' alleged regulatory violations, he suffered emotional distress—including stress and anxiety arising from gambling-related financial losses—and he seeks to recover damages for that alleged distress under a theory of negligent infliction of emotional distress ("NIED"). (ECF No. 1 at PageID.24.) That claim fails as a matter of law.

NIED is strictly limited to bystander-witness circumstances. Courts "decline to apply the tort of [NIED] beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993); *see also Williams v. WMC Mortg. Corp.*, No. 05-73356, 2006 WL 2844128, at *4 (E.D. Mich. Sept. 29, 2006). Plaintiff does not allege that (i) any third person suffered any physical injury; or (ii) he witnessed any physical injury to a third person. Instead, he alleges emotional distress associated with *his own* gaming. (ECF No. 1 at PageID.21–25.) That cannot form the predicate of an NIED claim under Michigan law. *Duran*, 504 N.W.2d at 720; *Williams*, 2006 WL 2844128, at *4.

### G.   <u>The Court Should Dismiss the EFTA Claim.</u>

#### 1.   **Plaintiff Fails to Identify Any EFTA Provision or Allege an "Unauthorized Electronic Fund Transfer."**

Plaintiff alleges that DraftKings violated the Electronic Fund Transfer Act ("EFTA") by accepting electronic deposits into his DraftKings account during periods when he contends state gaming laws prohibited those transfers. (ECF No. 1 at PageID.24.) That theory fails at the outset.

Congress enacted the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The statute contains several distinct provisions; a plaintiff must identify the specific statutory provision

allegedly violated. Courts routinely dismiss EFTA claims that fail to do so. *Simon v. JPMorgan Chase Bank, N.A.*, No. 15-CV-10202, 2015 WL 8608632, at *3 (E.D. Mich. Dec. 14, 2015) ("Plaintiff refers to no provision of the EFTA demonstrating that Defendant committed a substantive violation, even if every fact pled by Plaintiff is true."); *see also Barvie v. Bank of America, N.A.*, No. 18-cv-449-JLS (BGS), 2018 WL 4537723, at *3 (S.D. Cal. Sept. 21, 2018); *Prignoli v. Bruczynski*, No. 20-cv-907 (MKB), 2021 WL 4443895, at *4 (E.D.N.Y. Sept. 28, 2021). The Complaint identifies none. That omission alone requires dismissal.

Even putting that defect aside, the claim fails on the merits. The EFTA applies only to "unauthorized electronic fund transfers," defined as transfers "initiated by a person other than the consumer without actual authority." 15 U.S.C. § 1693a(12). An unauthorized transfer is a prerequisite to any EFTA claim. *Simon*, 2015 WL 8608632, at *4. The Complaint alleges that Plaintiff initiated and authorized the deposits into his DraftKings account himself. (ECF No. 1 at PageID.3, 5–8, 24–25.) That ends the inquiry.

Plaintiff attempts to relabel the transfers "unauthorized" solely because he contends DraftKings lacked authority under state law to accept them. (*Id.* at PageID.24.) But the EFTA does not convert a consumer-authorized transfer into an "unauthorized" one based on alleged regulatory noncompliance by the recipient. *See* 15 U.S.C. § 1693a(12); 12 C.F.R. § 1005.2(m). Because Plaintiff identifies no

violated provision and alleges no unauthorized transfer as defined by the statute, the EFTA claim must be dismissed.

2.      **Plaintiff's EFTA Claim Is Time-Barred.**

Even if Plaintiff could plead the elements of an EFTA claim—which he cannot—the claim is independently barred by EFTA's one-year statute of limitations. The EFTA requires that any action be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). Plaintiff alleges that the challenged transfers occurred between January 2022 and January 2023. (ECF No. 1 at PageID.8.) This action was filed on December 30, 2025—well outside the limitations period. The untimeliness is apparent on the face of the Complaint and provides an independent and dispositive basis for dismissal.

## III.   <u>The Class Allegations Should Be Dismissed or Stricken.</u>

If the Court were to allow any of Plaintiff's individual claims to proceed (and it should not), the Court must dismiss or strike his class allegations. As discussed in Section I, Plaintiff cannot represent a class while proceeding pro se. Plaintiff also lacks Article III standing to assert claims under the laws of Colorado, Connecticut, Indiana, Iowa, Louisiana, and New York. (ECF No. 1 at PageID.21–24.) A named plaintiff must demonstrate a personal injury under each law he invokes and may not manufacture standing by purporting to represent a nationwide class. *See Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 807 (E.D. Mich. 2023);

*GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 819 (E.D. Mich. 2018).

Plaintiff alleges that he is a Michigan resident who registered his DraftKings

account in Michigan, established gaming limits in Michigan, and suffered the

alleged harm in Michigan. (ECF No. 1 at PageID.3, 8.) He alleges no facts

suggesting that he placed wagers, maintained accounts, or suffered any injury in

any other state. Courts in this District routinely dismiss multi-state claims on that

basis. *Bledsoe*, 663 F. Supp. 3d at 808, n.10 ("At the motion to dismiss phase,

courts in this circuit have consistently concluded that where the named plaintiffs

did not allege that they suffered injuries in states other than the ones related to their

individual injuries, they lack standing to raise claims on behalf of a nationwide

class"); *see also GEICO*, 345 F. Supp. 3d at 819. Plaintiff cannot serve as an

adequate class representative while proceeding pro se and lacks Article III standing

to assert non-Michigan claims; the class allegations must be dismissed or stricken.

## <u>CONCLUSION</u>

For these reasons, the Court should grant DraftKings' Motion to Dismiss

Plaintiff's Complaint with prejudice.

Respectfully submitted


Dated: <u>March 2, 2026</u>          By: <u>/s/ Jon R. Steiger</u>
                                     Jon R. Steiger (P35505)
                                     Patrick M. McCarthy (P49100)
                                     Dane M. Lepola (P82742)
                              **HOWARD & HOWARD ATTORNEYS PLLC**
                              450 West Fourth Street
                              Royal Oak, Michigan 48067-2557
                              Phone: (248) 645-1483
                              Facsimile: (248) 645-1568
                              Email: JSteiger@HowardandHoward.com
                                     PMcCarthy@HowardandHoward.com
                                     DLepola@HowardandHoward.com


                                     Richard R. Patch
                                     Clifford E. Yin
                                     Marcia Valadez Valente
                                     *(Each Admitted to Practice Before the U.S.
                                     District Court for the Eastern District of
                                     Michigan)*
                              **COBLENTZ PATCH DUFFY & BASS LLP**
                              One Montgomery Street, Suite 3000
                              San Francisco, California 94104-5500
                              Phone: (415) 391-4800
                              Facsimile: (415) 989-1663
                              Email: EF-RRP@CPDB.com
                                     EF-CEY@CPDB.com
                                     EF-MVV@CPDB.com

                              *Attorneys for Defendant DraftKings Inc.*

017373.0058 4925-9347-1628.15                    25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that he filed ***DraftKings Inc.'s Motion to Dismiss,*** ***Or, In The Alternative, Motion to Strike Class Allegations*** along with this accompanying ***Certificate of Service*** using the CM/ECF Filing system, which generated a Notification of Electronic Filing to all persons currently registered with the Court in the above-referenced matter.

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: <u>March 2, 2026</u>

By: <u>/s/ Jon R. Steiger</u>
    Jon R. Steiger (P35505)
450 West Fourth Street
Royal Oak, Michigan 48067-2557
Phone: (248) 645-1483 | Fax: (248) 723-1568
Email: JSteiger@HowardandHoward.com

***Attorneys for Defendant DraftKings Inc.***

4906-2804-0595

017373.0058 4925-9347-1628.15

26